IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ANGELA LARSON,<br><br>    Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,<br><br>    Defendant. | MEMORANDUM DECISION<br>& ORDER<br><br><br>Case No. 2:08CV00388DAK<br><br>Judge Dale A. Kimball |

    This matter is before the court on Plaintiff Angela Larson's Plaintiff's Memorandum in Support of Reversal or Remand of Commissioner's Administrative Decision seeking judicial review of the Commissioner's final decision denying her continuing eligibility for Adult Child Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI"). This court held a hearing on the appeal on March 31, 2009. Plaintiff was represented at the hearing by Bradley N. Roylance, and Defendant was represented by Carolyn D. Cooper. The court has carefully considered the memoranda, the administrative record, and the law and facts relating to the appeal. Now being fully advised, the court renders the following Memorandum Decision and Order.

**PROCEDURAL HISTORY**

In August 1999 the Social Security Administration ("SSA") ended Ms. Larson's benefits after it had performed a continuing disability review of Ms. Larson and found that she was no longer disabled. Ms. Larson subsequently filed a request for a hearing before an Administrative Law Judge ("ALJ"), who denied her disability claim in March 2002. The Appeals Council affirmed the ALJ's denial in April 2004. In April 2006, the U.S. District Court for the District of Utah reversed the decision of the ALJ and Appeals Council and remanded the case to the ALJ for further administrative proceedings. Pursuant to that order, the ALJ held a supplemental hearing and issued a second decision on August 31, 2007, again finding that the claimant was no longer disabled under the final step of the sequential evaluation of disability. The Appeals Council declined to assume jurisdiction, and on May 15, 2008, Ms. Larson recommenced an action in the U.S. District Court for the District of Utah.

**STANDARD OF REVIEW**

The Commissioner's decision that a claimant is not disabled may be reviewed to determine whether the factual findings are supported by substantial evidence in the record as a whole and whether the relevant legal standards were correctly applied. See Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389 (1971).

**DISCUSSION**

At the time of Ms. Larson's initial disability review the Commissioner used a five-step sequential evaluation process to determine if a claimant was disabled and

eligible for continuing benefits.[1]  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Williams v. Bowen, 844 F.2d 748, 750.  Under step one, if the decisionmaker determines that the claimant is not engaged in substantial gainful activity, then the claimant is evaluated under step two; however, if the claimant is engaged in substantial gainful activity, then the decisionmaker must determine that the disability has ended.  Under step two, the decisionmaker must determine whether the claimant has an impairment or combination of impairments severe enough to limit his or her ability to do basic work activities.  See 20 C.F.R. § 404.1520(c).  If the claimant is found to be severely impaired, then the decisionmaker must determine under step three whether the claimant's impairment, or an equivalent impairment, meets the durational requirement and is listed in Appendix 1 of Subpart P, 20 C.F.R. § 404.  See 20 C.F.R. § 404.1520(d).  If the claimant's impairment, or its equivalent, is listed, the claimant is presumed to be disabled.  Under step four, if the decisionmaker determines that the claimant is able to perform work he or she has done in the past, then the claimant is deemed disabled.  See id. § 404.1520(e).  Finally, under step five, the decisionmaker determines that the claimant is disabled unless the Commissioner can establish that "the claimant retains the capacity 'to perform an alternative work activity and that this specific type of job exists in the national economy.'"  Williams, 844 F.2d at 751 (quoting Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984)); see also 20 C.F.R. § 404.1520(f).

Step two is relevant on this appeal because Ms. Larson challenges the Commissioner's position that the claimant does not have an impairment or combination

---

1. A similar eight-step sequential evaluation process is now used for continuing disability reviews. 20 C.F.R. § 404.1594 (effective Dec. 18, 2006).

3

of impairments severe enough to limit her ability to do basic work activities. Step five is also relevant because Ms. Larson challenges the Commissioner's assertion that there are a sufficient number of alternative jobs in the national economy which would accommodate her disability. Ms. Larson's treating doctors have stated opinions that contradict the Commissioner's position that Ms. Larson is not disabled and still able to do work activities. Thus, the opinions of Ms. Larson's doctors are relevant to both step two and step five. If the doctor's opinions are controlling, then Ms. Larson is disabled and her impairment or combination of impairments is sufficiently severe to affect her ability to work and to find a sufficient quantity of jobs in the national economy which would accommodate her impairments. Since the opinions of treating physicians are entitled to controlling weight and the opinions of the treating physicians supported Ms. Larson's disability claim, the correctness of the ALJ's decisions turns on whether he gave the correct amount of weight to the doctors' opinions. The first section of this Memorandum Decision & Order will address why Ms. Larson's doctors' opinions are controlling and the second section will address how the SSA erred when it determined that "other work" was sufficiently available to Ms. Larson.

      The opinion of a treating physician is usually entitled to controlling weight. See Miller v. Chater, 99 F.3d 972 (10th Cir. 1996); Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987). "If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; i.e., it must be adopted." Social Security Ruling 96-2p. The Commissioner must provide "specific, legitimate reasons" when the opinion of a treating physician is rejected. See Miller v. Chater, 99 F.3d 972 (10th Cir. 1996); Frey v. Bowen, 816 F.2d 508, 513 (10th

Cir. 1987).  Additionally, to determine what weight should be given to any medical opinion the following specific factors must be considered by the ALJ:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)(6).

Goatcher v. U.S. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001).  A treating physician's opinion should be given additional weight because it "reflects expert judgment based on continuing observation of a patient's condition over a prolonged period of time." Williams v. Chater, 923 F.Supp. 1373, 1379 (D. Kan. 1996); see also 20 CFR § 404.1527(d).

Dr. Gaufin performed the initial spinal surgery on Ms. Larson and has treated Ms. Larson frequently over an eleven year period.  On March 6, 2002, Dr. Gaufin stated that Ms. Larson continues to suffer from chronic back pain, weakness, and cannot sit or stand for long periods.  See Pls.'s Mem. 8.  Ms. Larson's problems are characterized by swelling, muscle atrophy and weakness, reflex changes, tenderness, crepitus, muscle spasm, abnormal gait, and sensory loss.  Id.  Dr. Gaufin opined that Ms. Larson would have to take breaks and would miss at least four days of work per month.  Id.

Dr. Gaufin met the test set forth in Goatcher: 1) Dr. Gaufin treated Ms. Larson frequently over an eleven year period; 2) Dr. Gaufin performed extensive treatment on Ms. Larson, including spinal surgery; 3) Dr. Gaufin's opinion was supported by the medical record and three other treating doctors; 4) Dr. Gaufin's opinion was consistent

with the record as a whole; (5) Dr. Gaufin was a specialist in neurosurgery; and (6) no other legitimate factors tend to contradict Dr. Gaufin's opinion. Therefore, Dr. Gaufin's opinion is entitled to controlling weight.

In the ALJ's second opinion, the ALJ did not give any weight to Dr. Gaufin's opinion that Ms. Larson was disabled and not capable of performing full-time work. The ALJ reasoned that

> [t]he activities listed above, the work activity noted, the medical record discussed, and the testimony set forth herein, indicate that the claimant could have performed the easier work noted by the vocational expert and that her level of activity did not require the level of absenteeism suggested by her doctor. Further, there is no support or basis in the clinical records to support a rate of absenteeism this profound.

Tr. 596.

The following section will show that the ALJ erred when he determined that 1) Ms. Larson's [daily] activities, 2) her work activity, 3) her medical record, and 4) the relevant testimony did not support the opinions of Dr. Gaufin, Dr. Bateman, Dr. Bova, and Dr. Reichert that Ms. Larson would need to miss at least four days of work per month.

Since Dr. Gaufin meets the test in <u>Goatcher</u>, the ALJ should have assigned controlling weight to Dr. Gaufin's opinions instead of summarily dismissing Dr. Gaufin's opinion, which was that Ms. Larson was disabled. Instead of concluding that Ms. Larson's "level of activity did not require the level of absenteeism suggested by her doctor" and that "there is no support or basis in the clinical records to support a rate of absenteeism this profound", he should have given controlling weight to Dr. Gaufin's opinion that Ms. Larson was disabled and not capable of performing full-time work. For the ALJ to dismiss Dr. Gaufin's opinion, the ALJ would have had to give "specific,

legitimate" reasons that supported his assertions. The ALJ did not provide "specific, legitimate" reasons for why Ms. Larson's daily activities, Ms. Larson's work activity[2], the medical record, and testimony were sufficient to dismiss Dr. Gaufin's opinion. The ALJ should have linked his conclusions about Dr. Gaufin's opinion to specific evidence in the record. See Social Security Ruling 96-2p ("[T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record . . .").

Dr. Kim Bateman's opinion

Dr. Bateman opined in a January 2002 report that Ms. Larson would need to take unscheduled breaks every 20 to 30 minutes during an eight-hour workday and, on average, would have to rest ten minutes during each unscheduled break. Tr. 483. Dr. Bateman responded that the Ms. Larson is likely to be absent more than four days per month. Tr. 485. Dr. Bateman also stated on May 10, 2001, that a sedentary job with scheduled breaks would not accommodate Ms. Larson.

Dr. Bateman's opinion is entitled to controlling weight because he met the test in Goatcher. Dr. Bateman was the doctor who diagnosed Ms. Larson with a vertebrae fracture after her initial car accident in 1991. He had a lengthy treatment relationship with Ms. Larson, having examined her frequently over an eleven year period. Dr. Bateman examined the same medical records that Dr. Gaufin's examined in preparing his opinion and came to his own independent conclusion about Ms. Larson's impairment.

---

2. Ms. Larson's work history does not show that her doctors were wrong about her need for a relatively high "level of absenteeism." For several of her jobs, she had to quit her job because of her disability. During her longest period of employment, she was a physical therapy aide at Western Neurological Associates; however, her employer was unusually accommodating, and she had close access to two of her treating doctors. Thus, her job at Western Neurological Associates is distinguishable from the type of employment that she could expect to find in the national economy.

7

Dr. Bateman's opinion is consistent with the record as a whole and is consistent with three other treating doctors. Although Dr. Bateman is a family practice physician and not a specialist like Dr. Gaufin, the ALJ did not cite any legitimate factors that contradict Dr. Bateman's opinion. Thus, under the law in Goatcher, Dr. Bateman's opinion is entitled to controlling weight.

The ALJ improperly dismissed Dr. Bateman's opinion that Ms. Larson was disabled and not able to work full-time. The ALJ erred when he misinterpreted Dr. Bateman's statement that Ms. Larson was capable of sustaining full-time work. Id. In response to the ALJ's interpretation of Dr. Bateman's opinion, Dr. Bateman wrote a letter to the Commissioner, explaining that the ALJ had misconstrued his statement that Ms. Larson "could sustain a full-time job with her impairments." Tr. 479. In the letter, Dr. Bateman clarified that a full-time job only referred to a full-time job "that could fully accommodate her limitations." Id.

The ALJ also misconstrued Dr. Bateman's treatment notes, stating that Ms. Larson was "dancing and hiking."[3] Id. Similarly, the Commissioner attempts to reject Ms. Larson's appeal by pointing to her daily activities of "dancing" and "mountain climbing", which were mentioned in Dr. Bateman's treatment notes. See Def. Br. at 30. However, the Commissioner, like the ALJ, also misconstrues Dr. Bateman's treatment notes and does not give sufficient weight to both Ms. Larson's testimony and Dr. Bateman's letter, which both clarify the meaning of the treatment notes. Dr. Bateman

---

3. Ms. Larson explained that the dancing consisted of nothing more than briefly dancing in the bathroom while getting dressed in the morning–except for one time when she was at a cousin's house and "danced around his room" for about 30 minutes. What the Commissioner terms "mountain climbing" was a drive up to a reservoir where Ms. Larson got out of her car and walked down the hill to the water. Due to the instability of her gait, she fell while walking down the hill. The entire outing lasted approximately 45 minutes. Tr. 530.

explained in the letter that the "dancing" and "mountain climbing" were not performed to the extent an unimpaired individual might perform them.  Tr. 479.  Dr. Bateman also noted that Ms. Larson was injured each time she attempted these activities; even though Ms. Larson's "dancing" and "hiking" were much less strenuous than those terms might imply, she still tended to become injured when attempting to perform such activities.  Thus, Ms. Larson's daily activities actually support a finding that she is disabled and unable to work full-time.  The ALJ erred when he failed to mention Dr. Bateman's letter of clarification, arguably one of the most significant documents in the trial record.  See Def. Br. 33.

> Drs. Bova's and Reichert's opinions

Drs. Charles Bova and Walter Reichert both opined that Ms. Larson was disabled and not capable of full-time work, which supports Drs. Gaufin's and Bateman's opinions.  At the second hearing, Dr. Bova concurred with Dr. Gaufin's assessment on March 6, 2002, and he opined that she could sit for at least six hours and stand or walk for about two hours during an eight-hour workday.  Tr. 934.  Dr. Reichert, a treating physician, also stated on November 6, 2006, that he concurred with Dr. Gaufin's assessment and added that her condition had not changed since March 2002.  Dr. Reichert opined that Ms. Larson could sit for about four hours and stand or walk for less than two hours during an eight-hour workday.  Tr. 934.

Both Drs. Bova's and Reichert's opinions were entitled to substantial weight.  Drs. Reichert's and Bova's opinions were supported by adequate evidence.  Both doctors based their independent opinions from the same medical records that Dr. Gaufin had used to form his opinion, but the ALJ did not give them any weight.  The ALJ did not even

mention Drs. Bova's or Reichert's opinions in his second opinion.

The ALJ erred when he ignored Drs. Reichert's and Bova's opinions and did not provide specific and legitimate reasons for rejecting the doctors' opinions. The Commissioner argues that this oversight was a harmless error because the ALJ properly rejected Dr. Gaufin; however, as explained above, the ALJ <u>did not</u> properly reject the opinion of Dr. Gaufin. Thus, the ALJ erred when he did not consider Drs. Reichert's and Bova's opinions.

<u>Availability of Other Work</u>

If the ALJ had given the treating doctors sufficient weight, then the ALJ would have had to find that Ms. Larson had a severe impairment. At the fifth and final step of the sequential evaluation, the burden shifts to the Commissioner to identify specific jobs existing in substantial numbers in the national economy that claimant can perform despite the identified limitations. The Commissioner argues that the ALJ accounted for most of Ms. Larson's requested accommodations. However, the ALJ overlooked the two most important accommodations deemed necessary by her doctors: 1) taking ten minute breaks every thirty minutes and 2) missing work at least four days each month. The SSA and the ALJ failed to account for these two necessary and important accommodations when determining whether any jobs were available to Ms. Larson. If the SSA and the ALJ had taken into account that Ms. Larson must take a ten minute break every thirty minutes and must miss work at least four days per month, then they would have found that there is an insufficient number of jobs in the national economy that would accommodate Ms. Larson's disability. Tr. 1017-18.

The ALJ's decision that Ms. Larson has not met the SSA's criteria for a disability

that qualifies her for benefits and insurance is not supported by substantial evidence.  The ALJ should have assigned controlling weight to the opinion of Dr. Gaufin that Ms. Larson was disabled. The ALJ mishandled the opinion of Dr. Bateman, which was that Ms. Larson was disabled.  The ALJ also failed to mention the opinions of Drs. Bova and Reichert, which were that Ms. Larson was disabled.  In addition, the ALJ erred when he opined that under the final step of a sequential analysis Ms. Larson could find full-time employment because he failed to accommodate Ms. Larson's legitimate need to miss more than four days of work in a month due to her disability.

## CONCLUSION

For the foregoing reasons, the Administrative Law Judge's decision is REVERSED.  The court orders the Defendant to immediately award benefits beginning in August 1999 when Ms. Larson's benefits were incorrectly denied.  The Clerk of the Court is directed to enter judgment in favor of Ms. Larson and close the case.

DATED this 10th day of April, 2009.

BY THE COURT:

_____
Dale A. Kimball
United States District Judge